LINCOLN NATIONAL LIFE INS. CO. v. RIDER et al.

No. 24378. March 26, 1935.

W. D. Calkins, Jos. L. Hull, and Kelly & Grigsby, for plaintiff in error.

George E. Rider, for defendants in error.

BAYLESS, J. The Lincoln National Life Insurance Company, a corporation, hereinafter called plaintiff, instituted an action in the district court of Marshall county, Okla., against several parties, among them George E. Rider. Rider is the only one of said parties interested in the appeal, and will be referred to hereinafter as defendant. The purpose of the action was to foreclose a mortgage on certain real estate and to quiet title as against the defendant. The trial court decided the issues between plaintiff and defendant in favor of the defendant, and the plaintiff brought this appeal.

The facts are these: J. H. Woodruff and wife (hereinafter called Woodruff) mortgaged the land in question to Exchange Trust Company, a corporation, to secure a certain debt; the Trust Company thereupon assigned the note and mortgage to the plaintiff; a creditor of Woodruff levied on Woodruff's equity in the land and had it sold under execution; the purchaser of this land at the execution sale bought it subject to plaintiff's mortgage; the purchaser at the sheriff's sale conveyed to the defendant all of the mineral rights under 40 acres of this land subject to the mortgage indebtedness of record; the purchaser then conveyed the land by quitclaim deed to one Neff; and Neff then conveyed the land by warranty deed to Peiker. When the mortgage matured, plaintiff and Peiker entered into an agreement for the extension of the time of the payment of said note; and in said agreement the execution, delivery, and assignment of the note and mortgage, as aforesaid, was duly recited, and it was agreed that the note was unpaid, and that as a consideration for extending the time of payment thereof, Peiker should pay the unpaid balance due on the indebtedness in periodical payments. The concluding paragraph of the agreement reads as follows:

"And the parties to this agreement hereby consent to said extension and agree that said mortgage shall continue a first lien upon said premises, and that said note and mortgage and all their covenants and conditions shall remain in force except as herein modified."

The only evidence introduced in the case was the various written instruments above mentioned.

The defendant argues that the judgment of the trial court is sustainable upon two grounds. The first ground that we will notice is that of novation.

We have defined "novation" and its essential elements, as follows:

"In every novation there are four essential requisites: (1) a previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the extinguishment of the old contract; and (4) the validity of the new one. A novation is a new contractual relation. It is based upon a new contract by all the parties interested."

See Martin v. Leeper Bros. Lbr. Co., 48 Okla. 219, 149 P. 1140; Alkire v. Acuff, 134 Okla. 43, 272 P. 405; Williams v. Otis, 155 Okla. 173, 8 P. (2d) 728; and Tulsa Ice Co. v. Liley, 157 Okla. 86, 10 P. (2d) 1090.

We have also said that three parties are essential to a novation agreement. Martin v. Leeper Bros. Lbr. Co., supra; Fuller v. Stout, 66 Okla. 15, 166 P. 898; Burford v. Hughes, 75 Okla. 150, 182 P. 689. There are two parties to this agreement—the plaintiff and Peiker. Woodruff, the original maker, is nowhere shown to have been consulted or to have consented to the extension agreement. There was no novation for the lack of this essential element.

Defendant's other ground may be summarized best as follows: Plaintiff, by entering into the extension agreement with Peiker, after defendant had acquired his interest of record and without the defendant's consent, lost the priority of lien which it formerly had had by virtue of the mortgage given by Woodruff. Defendant bases this contention upon several grounds.

The first ground is: That the extension agreement created a new and subsequent debt which had the effect of paying the debt of Woodruff. No evidence was introduced in this case other than the written instruments relating to the acts of the various persons

interested in the property as aforesaid. The extension agreement stated in so many words that the original note and mortgage were not affected by the agreement except as they were modified as to the time of payment. No one testified that the parties to the agreement had a different intention or understanding.

The second point is:

"When Peiker purchased the land subject to mortgage, and said purchase ratified by plaintiff in error by extension agreement with Peiker, the land became the principal debtor and Woodruff the surety, and when time of payment of mortgage indebtedness was extended by agreement between plaintiff in error and Peiker to which Woodruff was not a party, Woodruff, then occupying position of surety, was released and discharged, and lien was extinguished as to all persons holding title subject to mortgage, except Peiker."

Defendant argues that prior to the extension agreement, Woodruff was the principal or primary obligor on the debt, but when Peiker assumed and agreed to pay the debt thereafter, Peiker thereupon and thereby became the principal obligor and Woodruff merely the surety. Then he argues, further, that the surety (Woodruff) was released from the debt by the act of the plaintiff in extending the time of the payment without the surety's consent. He then argues, further, that because the surety (Woodruff) is released, the debt is released. Defendant does not argue that Woodruff was released either as principal or surety, because a new or different debt was then in existence. Defendant seeks to apply to the debt—the real object under consideration—the same life and existence with relation to Woodruff when he was only surety that would have applied to the debt had Woodruff remained the principal. This is not logical or reasonable.

What we said in the case of Unger v. Shull, 154 Okla. 277, 7 P. (2d) 881, is applicable here:

"A mortgage secures a debt or obligation, and not the evidence of it, and no change in the form of the evidence, or in the mode or time of payment, can operate to discharge the mortgage. So long as the debt secured remains unpaid, neither the renewal nor substitution of the evidence of the debt will impair the lien of the mortgage."

See, also, First National Bank of Altus v. Hendrick, 135 Okla. 260, 275 P. 314.

We have heretofore construed the rights as establishing the fact that the same debt remained in existence and that certain of

the parties involved merely changed their positions with relation thereto. This being so, both of defendant's grounds in this respect are answered when we say that no new debt was created; and second, that there could be no novation for the lack of this essential element. See discussion above with reference to novation and the essential elements thereof.

Defendant next says that the whole transaction, including the fact that Woodruff was not made a party to the action, evidences an intention to release or discharge the original debt. We have heretofore rejected that part of his argument relating to the interpretation of the extension agreement. In addition to this, it appears in the record that the plaintiff also pleaded and relied upon the original note and mortgage, and no defense was made to them separately from the extension agreement. There are a number of logical reasons, not all indicative of an intent to release Woodruff, why Woodruff was not made a party to the action. Among such reasons are: First, he was not a necessary party, having theretofore been divested of his title to the land; second, by not seeking a personal judgment against him, no jury would be necessary (Vose v. U. S. Cities Corp., 152 Okla. 295, 7 P. (2d) 132); and, third, when, as is contended in the briefs, Woodruff was a nonresident and personal service could not be obtained upon him.

We are of the opinion that the findings of the trial court are clearly against the weight of the evidence, and for that reason, the judgment of the trial court is reversed and the cause is remanded, with directions to take further proceedings not inconsistent with the views herein expressed.

McNEILL, C. J., OSBORN, V. C. J., and WELCH and CORN, JJ., concur.