WARREN PETROLEUM CORPORA-
TION, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

KERR–McGEE OIL INDUSTRIES, INC.,
Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

CITIES SERVICE OIL COMPANY,
Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

Nos. 6327, 6331, 6344.

United States Court of Appeals
Tenth Circuit.

Sept. 3, 1960.

Warren M. Sparks, Tulsa, Okl., and R. J. Leithead, Bartlesville, Okl., for petitioners (Lambert McAllister, Washington, D. C., Lynn Adams, Oklahoma City, Okl., Gentry Lee, F. H. Bacon, C. C. Cammack, Bartlesville, Okl., with them on the briefs).

David J. Bardin, Atty., F.P.C., Washington, D. C. (Willard W. Gatchell, Gen. Counsel, Howard E. Wahrenbrock, Solicitor, and Edwin J. Reis, Atty., F.P.C., Washington, D. C., with him on the briefs), for respondent.

Before BRATTON, PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

These are petitions to review separate orders of the Federal Power Commission rejecting and returning without notice or hearing, changes in natural gas rates filed by petitioners. The petitions present common questions and are considered together.

The petitioners, with Oklahoma Natural Gas Company, own and operate three gasoline plants in Garvin County, Oklahoma, in which natural gas gathered from wells in the area is processed for liquefiable hydrocarbons and residue gas. They entered into contracts for sale of their respective shares of the residue gas to Oklahoma Natural Gas Company. The preambles to each of the contracts were substantially the same, of which the following is typical:

> "THIS AGREEMENT, made and entered into this 24th day of December, 1952, between OKLAHOMA NATURAL GAS COMPANY, hereinafter referred to as 'BUYER', and WARREN PETROLEUM CORPORATION, hereinafter referred to as 'SELLER'; * * *"

The price provision, after fixing a specific amount in cents per thousand cubic feet of gas, contained what is known in the industry as a "favored-nation" clause, providing:

> "C. Notwithstanding the foregoing, the price to be paid for gas delivered hereunder shall never be less than any price legally fixed by the Corporation Commission of the State of Oklahoma or any similar body having jurisdiction for gas produced from any wells located in the counties hereinafter listed in this paragraph. Further, the price to be paid for gas delivered hereunder shall never be less than that paid by Buyer to other sellers of gas from leases, lands, or gas processing plants located in Garvin, McClain, Stephens, Cleveland, Grady, Caddo, Canadian Counties in the State of Oklahoma."

The contracts also provided: "The terms, covenants, and agreements hereof shall extend to and be binding upon the parties hereto, their assigns and successors in interest. This contract is assignable by either party."

Oklahoma Natural made a partial assignment of the contracts in question [1] to Cities Service Gas Company, which Company was engaged in interstate transportation of natural gas and was a natural gas company within the meaning of the Natural Gas Act. 15 U.S.C.A. § 717a. Thereafter the petitioners obtained certificates of convenience and necessity and delivered the assigned gas to Cities Service Gas Company and received the purchase price from it. A similar partial assignment was made to Lone Star Gas Company and Oklahoma Natural continues to receive into its own pipe line system the balance of the gas purchased.

On the date of the assignments the contract price for gas was 11¢ per Mcf. Thereafter Oklahoma Natural made other purchases within the area specified in the various contracts at a price of 16.8¢ per Mcf. Cities Service Gas Company made no purchases within the area other than those under the contracts. The basis for the new rates sought to be filed by the petitioners was the contract provision that they should not receive less for their gas than that paid by Oklahoma Natural to other sellers in the designated counties. In rejecting the notice of change of rates and returning them to the petitioners, the Commission stated that it refused the filing because the applicability of the "favored-nation" clause in the contracts was to be determined by purchases made by Cities Service Gas Company, which was then the buyer under the contract, and not Oklahoma Natural. The question, therefore, turns upon whether the operation of the "favored-nation" clause continues to be determined by purchases of gas by Oklahoma Natural, or by those made by the assignee, Cities Service Gas Company. The position of the Commission is that after the contract was assigned, Oklahoma Natural was no longer the purchaser of the gas and Cities Service Gas Company became the buyer under the terms of the contract. The Commission says, in effect, that Cities Service Gas Company

1. The assignments contained these pertinent provisions:

"1. Oklahoma Natural does hereby assign unto Cities Service the right to receive sufficient gas from gas available to Oklahoma Natural under the residue gas contracts with Warren and Kerr-McGee to constitute twenty-three per cent (23%) of the Plant Output (as hereinafter defined) when added to the gas purchased by Cities Service under assignment of the Cities Service Oil contract with Oklahoma Natural dated July 13, 1953. The Plant Output shall be the residue gas available for delivery as pipeline gas to Cities Service, Lone Star Gas Company (Lone Star), Oklahoma Natural, or other assignees from the Garvin County Plants including, without limiting the generality of the foregoing, all residue gas resulting from the processing of raw gas owned by any or all of the co-owners, as said plants may be enlarged or increased in number by the co-owners thereof. Cities Service agrees to accept, receive and pay for sufficient gas from Warren and Kerr-McGee that when added to the gas taken and received under assignment of the Cities Service Oil contract dated July 13, 1953, will constitute 23% of the Plant Output, or to pay for said portion of the Plant Output if not taken, subject to and upon the following terms and conditions, to-wit:

"A. This assignment is made and is limited to the right to receive and the obligation to pay for certain volumes of residue gas at the prices and under all terms and conditions of the residue gas purchase contracts which Oklahoma Natural has with Warren dated December 24, 1952, and Kerr-McGee dated June 15, 1953, and this assignment is subject to the fulfillment of, and Cities Service agrees to fulfill and comply with, all of the terms and conditions of said contracts insofar as the purchase of volumes of gas is made or is to be made hereunder by Cities Service from said companies. * * *

"2. In the event that the purchases by Cities Service are interrupted for an extended period of time, or in the event Cities Service fails to fulfill its obligations hereunder, Oklahoma Natural shall have the right to protect the fulfillments of said contract, or contracts, and shall have the right and privilege of purchasing such part of the residue gas as it may determine, and upon demand of Oklahoma Natural, Cities Service shall terminate this agreement and the assignment covered hereby shall thereafter have no further force and effect."

was substituted for Oklahoma Natural and that the "favored-nation" clause could be activated only by its purchases.[2]

■ At the outset, the Commission urges that its interpretation of the "favored-nation" clause as to the rate provision is a matter peculiarly within its competence, and that judicial review is limited to considering only whether the Commission's determination is reasonable. Its brief states: " * * * The Commission is far better equipped than reviewing courts to interpret and evaluate the natural gas purchase contracts which are not only essential to the business but which, in the case of independent producers, themselves usually constitute the rate schedules required to be filed with the Commission." This rule has no application in the instant case. It is quite apparent that the Commission's refusal to accept the rate filing was based upon its construction of the contract provisions and the application of ordinary principles of contract law, and not upon its experiences in the administration of the Natural Gas Act.[3] The identical question was recently answered contrary to the contention of the Commission in Texas Gas Transmission Corp.

et al. v. Shell Oil Co., 363 U.S. 263, 268, 80 S.Ct. 1122, 1126, 4 L.Ed.2d 1208, where it was said:

"The petitioners' argument that the Court of Appeals exceeded the allowable limits of judicial review is based upon the premise that the Commission's interpretation of the 'favored nation' clause reflects 'the application of its expert knowledge and judgment to a highly technical field,' so that the Court of Appeals was required to accept the Commission's interpretation if it had ' "warrant in the record" and a "reasonable basis in law," ' citing Unemployment Compensation Commission of Territory of Alaska v. Aragon, 329 U.S. 143, 153–154 [67 S.Ct. 245, 250, 91 L.Ed. 136]. But the record nowhere discloses that the Commission arrived at its interpretation of the 'favored nation' clause on the basis of specialized knowledge gained from experience in the regulation of the natural gas business, or upon the basis of any trade practice concerning 'favored nation' clauses. On the contrary the opinions of the examiner and the Commission show that both treated the question as one

2. The Commission recognizes that initially the rates may be fixed by contracts between natural gas companies and customers and that the Act does not purport to define the rate-setting powers of the companies. In United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. 332, 343, 76 S.Ct. 373, 380, 100 L.Ed. 373, it was said: "The initial rate-making and rate-changing powers of natural gas companies remain undefined and unaffected by the Act. * * * The obvious implication is that, except as specifically limited by the Act, the rate-making powers of natural gas companies were to be no different from those they would possess in the absence of the Act * * " See also United Gas Pipe Line Co. v. Memphis Light, Gas and Water Division, 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed.2d 153.

3. The Commission's rejection and return of the notices of rate change included the following comments:

"You cite the favored-nation clause contained in the subject rate schedule and state that such clause was activated by a 16.8¢ per Mcf rate to be paid by Oklahoma Natural Gas Company for certain gas produced from the Knox Field, Grady County, Oklahoma. Examination of the subject rate schedule reveals that Oklahoma Natural was the original buyer party to the December 24, 1952 contract contained therein but subsequently assigned the contract to Cities Service Gas Company by an instrument dated May 15, 1956. Thus, Cities Service Gas Company is now the only buyer party to the contract comprising Rate Schedule No. 35.

"No claim is made that Cities Service will commence buying gas from the Knox field at 16.8¢ per Mcf. Accordingly, there is no basis for claiming activation of the favored-nation clause contained in Rate Schedule No. 35. Under the circumstances, your proposed rate increase is not acceptable as a rate schedule filing and is hereby rejected."

**316**

to be determined simply by the application of ordinary rules of contract construction."

■■■ We are unable to find any ambiguity in the meaning of the term "Buyer" as used in the different contracts. The petitioners are named and the instruments provided that each shall be referred to in the contract as the "Seller" and Oklahoma Natural as the "Buyer." The terms, for convenience, were substituted for the full names of the parties as is the custom in many contracts. Each term was used throughout the contracts as a proper noun and had the same effect as though the actual names of the parties had been used in full. The "favored-nation" clause fixed the price as that which Oklahoma Natural would pay in the area if different than the contract price. It is not disputed that without assignment the provisions would have been activated when Oklahoma Natural made other purchases of gas at 16.8¢ per Mcf. There may have been a valid reason why the parties desired that the price should be tied to that which Oklahoma Natural was paying within the territory, regardless of an assignment, and it was a legitimate subject of contract. Cities Service Gas Company acquired only "the right to receive and the obligation to pay for certain volumes of residue gas purchase contracts." This included the obligation of the "favored-nation" clause of the purchase contracts. The rights of petitioners cannot be diminished by an assignment. See 4 Am. Jur., Contracts, §§ 103, 104.

■■ Finally, the Commission contends that the assignments were new contracts between petitioners and the assignee which had the effect of substituting the assignee for Oklahoma Natural as the buyer. The requisites of a novation are: (1) a previous valid obligation, and (2) an agreement of all the parties that the old contract shall be extinguished and a valid one substituted for the old. A novation may be effected by the substitution of a new debtor in the place of the old one, with the intent to release the latter, or by the substitution of a new creditor in the place of the old one, with intent to transfer the rights of the latter to the former. See f. n. 1. All three parties must agree to the substitution. State ex rel. Com'rs of Land Office v. Pitts, 197 Okl. 644, 173 P.2d 923; Oil Field Gas Co. v. International Supply Co., 187 Okl. 262, 103 P.2d 91; Bickley v. Parks, 185 Okl. 74, 89 P.2d 936; James v. Johnson, 180 Okl. 106, 69 P.2d 51; Lincoln Nat. Life Ins. Co. v. Rider, 171 Okl. 262, 42 P.2d 842; Martin v. Leeper Bros. Lumber Co., 48 Okl. 219, 149 P. 1140; Standard Acc. Ins. Co. v. Federal Nat. Bank, 10 Cir., 112 F.2d 692.

The assignments, to which the petitioners were not parties, do not disclose any intent on the part of Oklahoma Natural to completely dispose of the contracts or to release itself from the burdens thereof, nor does the record disclose that the petitioners agreed to look to the assignee exclusively for performance. It is true that the assignments required the assignee to fulfill and comply with designated terms and conditions of the contracts insofar as the purchase of gas was concerned, but also the future liability of Oklahoma Natural was recognized as provision was made that if the purchases by the assignee were interrupted for an extended period of time, or if it failed to fulfill the obligations of the assignments, the right to resume the purchase and demand a termination of the assignment was reserved. The necessary requirements for a novation were not present.

The action of the Commission in each case is reversed and the matters are remanded with instructions to accept the filings.