The **PURE OIL COMPANY**, Petitioner,

v.

**FEDERAL POWER COMMISSION**, Respondent.

No. 13392.

United States Court of Appeals Seventh Circuit.

Feb. 26, 1962.

---

John C. Snodgrass, Palatine, Ill., Ben A. Harper, and Vinson, Elkins, Weems & Searls, Houston, Tex., of counsel.

Howard E. Wahrenbrock, Sol., Federal Power Commission, Washington, D. C., Ralph S. Spritzer, Gen. Counsel, Luke R. Lamb, Asst. Gen. Counsel, Milton J. Grossman, Atty., Federal Power Commission, Washington, D. C., for respondent.

C. Frank Reifsnyder, George D. Horning, Jr., Washington, D. C., Allen R. Grambling, El Paso, Tex., for intervenor, El Paso Natural Gas Co., Hogan & Hartson, Washington, D. C., and Hardie, Grambling, Sims & Galatzan, El Paso, Tex., of counsel.

Harry P. Letton, Jr., John Ormasa, Los Angeles, Cal., for intervenor Southern Cal. Gas Co.

Milford Springer, Robert M. Olson, Jr., Los Angeles, Cal., for intervenor Southern Counties Gas Co. of Cal.

Malcolm H. Furbush, Richard H. Peterson, F. T. Searls, San Francisco, Cal., for intervenor-respondent, Pacific Gas and Electric Co.

William M. Bennett, Chief Counsel, Public Utilities Commission, State of California, J. Calvin Simpson, Senior Counsel, John T. Murphy, Counsel, San Francisco, Cal., for the People of Cal. and Public Utilities Commission of Cal.

Before DUFFY, CASTLE and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

Petitioner, The Pure Oil Company, petitions to set aside an order of the Federal Power Commission, respondent, which refused to allow Pure to file and charge a rate of 16 cents per Mcf for natural gas theretofore being supplied to El Paso Natural Gas Company under three separate contracts at 10.6 and 11 cents per Mcf. The Commission refused to permit the filings on the ground that they were not authorized by the contracts between Pure and El Paso. Pure contends that the Commission erred in its construction of the contracts, resolved the issues by reference to standards other than governing canons of contract construction, and that the order is without substantial evidentiary support.

■ Pure is an independent producer of natural gas subject to jurisdiction of the Commission.[1] Pure has three contracts with El Paso for the sale of natural gas from the area in western Texas and southeastern New Mexico known as the Permian Basin. One contract, executed in 1954, concerns wells in the Jack Herbert Field, Upton County, Texas; another contract, made in 1952, relates to wells in the Clara Couch area, Crockett County, Texas; and the third contract, executed in 1954, relates to wells in the Jalmat Field, Lea County, New Mexico. Pursuant to regulations promulgated by the Commission under the Natural Gas Act,[2] copies of these contracts were filed and became rate schedules.

1. Phillips Petroleum Co. v. Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035.

2. 15 U.S.C.A. § 717 et seq.

Each of the contracts is for a twenty-year term, and each contains what is known as a two-party favored-nation clause providing, in effect, that if at any time the buyer, El Paso, should purchase from another seller any gas within a specified geographic area at a price "higher" than that being paid Pure under the contract, El Paso, should immediately begin paying the same higher price to Pure. Each contract defines the term "higher price" as used in the favored-nation clause. The language of the Herbert and Jalmat contracts is identical:

> " * * * In determining whether the price payable under such other contract or agreement is "higher" than the price payable for gas under this agreement, due consideration shall be given to the provisions of this agreement as compared with such other contract or agreement as to quantity and quality of gas, delivery pressures, gathering and compressing arrangements, provisions regarding measurement of gas including deviation from Boyle's Law, taxes payable on or with respect to such gas, and all other pertinent factors."

The comparable provision of the Couch contract is:

> " * * * In determining whether the price payable for such gas is "higher" than the price payable for gas under this agreement, due consideration shall be given to the provisions as to quality of gas, delivery pressures, gathering and compressing obligations, provisions regarding measurement of gas, including deviation from Boyle's Law, taxes payable on or with respect to such gas, and all other pertinent factors except quantity."

In 1958, El Paso entered into a contract with West Texas Gathering Company, and commenced purchases of gas thereunder, on a "cost-of-service" formula which Pure alleges represents a wellhead price of 16 cents per Mcf.

The increase of rates sought by Pure in its filings is predicated on the ground that the West Texas purchases by El Paso served to trigger the favored-nation clauses of the Pure-El Paso contracts and entitle Pure to a 16 cents per Mcf rate on each of those contracts. El Paso formally protested the filings on the basis that the West Texas sale was not comparable to the Pure sales and that, accordingly, the favored-nation clauses had not been triggered.

The Commission suspended the effectiveness of the increased rates and convened a hearing to determine whether the favored-nation clauses had been triggered. The Commission, in an opinion (25 FPC 383), affirmed the Examiner's decision that the clauses had not been triggered, denied the proposed increase, and ordered Pure to make refunds to El Paso.

Pure's filing of notices of increased rates precipitated the threshold question of whether the increases were contractually authorized. Determination of that question in the affirmative was a prerequisite to the Commission's jurisdiction to proceed to consider whether the increases sought were just and reasonable. Where the sale of natural gas by an independent producer is pursuant to a contract governing price an increase in rate by such producer is not lawful unless contractually authorized, irrespective of whether the increase might be just and reasonable, and the Commission must reject, for lack of jurisdiction under § 4(e) of the Natural Gas Act (15 U.S.C.A. § 717c(e)), any unilateral attempt by the producer to increase the contract rate. United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373. But where the contract authorizes a change in price, notice of a change in rate effected in conformity with the contract and filed pursuant to § 4(d) of the Act (15 U.S.C.A. § 717c (d)) forms the basis of Commission jurisdiction to determine whether the increase may be allowed as just and reasonable. United Gas Pipe Line Co. v.

Memphis Light, Gas and Water Division, 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed.2d 153.

Here the Commission rejected the increases as not contractually authorized. It found that El Paso's purchases from West Texas did not authorize price increases under the favored-nation clauses of the contracts with Pure.

The West Texas contract made available to El Paso gas from two newly developed Permian Basin fields, Emperor Field and South Kermit Field. The record contains evidence that the reserves of these fields are quite substantial; that the fields possess the exceptional quality of gas flow at an extremely high pressure with a consequent delivery potential which makes the gas exceptionally useful for peaking purposes; and the Commission, in agreement with the Examiner, found this quality to be a pertinent factor under the "higher price" provisions of the Pure contracts which, given due consideration, sufficiently distinguishes the gas purchases from West Texas from those under the Pure contracts to preclude the payment to West Texas from being regarded "higher" than Pure's prices.

The comparability provisions of the favored-nation clauses govern determination of whether a dollar and cents price, greater on its face, is actually higher when pertinent factors of the two transactions are compared. The clauses expressly enumerate certain of the contractual provisions or features which are to be considered in making such comparison. Pure contends the determination of "higher price" is limited to a comparison of these specified elements and such other pertinent factors as appear from the face of the contracts, and that the "all other pertinent factors" provision of the clauses does not extend to a factor such as peaking quality or capacity, a quality not an express subject of some provision or term of the contracts.

We agree with Pure that resolution of this issue of contract construction does not involve a matter which falls within the purview of Commission expertise but we are not persuaded by any of the arguments advanced by Pure that the record evinces an intention of the parties to limit the ordinary import and breadth of scope of the language "all other pertinent factors" in the manner contended for by Pure. And, inasmuch as it is the actual comparative values which must determine the true relationship of prices as being higher, equal or lower, we perceive no error in the legal conclusion, inherent in the Commission's determination, that the comparability clauses require consideration and comparison of all factors, whether or not the express subject of contract provision, which are pertinent to arriving at the value of the gas as delivered. Such factors, while not embracing purely subjective elements which may represent value to the particular purchaser only, do include those attributes and characteristics which serve to measure the value for pipe line distribution purposes of the gas contracted to be delivered.

Although the issue with reference to the scope of the comparability clauses is a matter of contract construction which does not here involve a subject within the Commission's special competence (Cf. Texas Gas Transmission Corp. v. Shell Oil Co., 363 U.S. 263, 80 S.Ct. 1122, 4 L.Ed.2d 1208; Warren Petroleum Corp. v. Federal Power Commission, 10 Cir., 282 F.2d 312) the remaining issue as to whether the gas purchased from West Texas possessed exceptional qualities for peaking purposes which enhance its value to the extent that its 16 Mcf price is not higher on a comparative basis than the prices of the gas furnished under Pure's contracts is, in our opinion, a matter subject to the application of the Commission's expert knowledge and judgment in a technical field. And, so viewed, we are required to accept the Commission's findings and conclusions if they have warrant in the record and a reasonable basis in law. Cf. United Gas Pipe Line Co. v. Memphis Light, Gas and Water Divi-

sion, 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed. 2d 153; Unemployment Compensation Commission v. Aragon, 329 U.S. 143, 153–154, 67 S.Ct. 245, 91 L.Ed. 136.

The record supports the Commission's conclusions regarding the exceptional physical characteristics of the West Texas gas supply. And, although the factor of location [3] alone does not remove it from application of the favored-nation clauses, the desirable deliverability characteristics due to the extremely high pressure of the wells reasonably warrants the Commission's findings distinguishing the West Texas supply from Pure's gas and that its usefulness and exceptional value for peaking purposes required a conclusion that its price was not actually higher than Pure's on a comparative basis.

The order of the Commission is affirmed.

Affirmed.

---

3. The West Texas supply wells are located close to the geographic center of El Paso's Permian Basin facilities and in the area that has become the operational . center of those facilities. But they are within an area embraced by the favored-nation clauses of Pure's contracts.