SHELL OIL COMPANY, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent,

Southern California Gas Company and Southern Counties Gas Company of California, El Paso Natural Gas Company, the People of the State of California and the Public Utilities Commission of the State of California, Pacific Gas and Electric Company, Intervenors.

The SUPERIOR OIL COMPANY,
Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent,

El Paso Natural Gas Company, Pacific Gas and Electric Company, People of the State of California and the Public Utilities Commission of the State of California, Southern California Gas Company and Southern Counties Gas Company of California, Intervenors.

HUNT OIL COMPANY et al., Petitioners,

v.

FEDERAL POWER COMMISSION,
Respondent,

El Paso Natural Gas Company, Pacific Gas and Electric Company, People of the State of California and the Public Utilities Commission of the State of California, Southern California Gas Company and Southern Counties Gas Company of California, Intervenors.

SUN OIL COMPANY, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent,

Southern California Gas Company and Southern Counties Gas Company of California, El Paso Natural Gas Company, the People of the State of California and the Public Utilities Commission of the State of California, Pacific Gas and Electric Company, Intervenor.

Nos. 14431, 14507, 14506, 14434.

United States Court of Appeals
Third Circuit.

Argued Dec. 6, 1963.

Decided July 30, 1964.

Oliver L. Stone, New York City (Thomas G. Johnson, Jr., New York City, on the brief), for Shell Oil Co.

J. Colbert Peurifoy, Dallas, Tex. (John A. Ward, III, Phillip D. Endom, Philadelphia, Pa., Charles F. Heidrick, Dallas, Tex., Robert E. May, Omar L. Crook, Richard F. Generelly, May, Shannon & Morley, Washington, D. C., on the brief), for Sun Oil Co.

Thomas G. Crouch, Dallas, Tex. (Robert W. Henderson, Dallas, Tex., on the brief), for Hunt Oil Co., and others.

H. W. Varner, Houston, Tex. (R. B. Voight, Houston, Tex., on the brief), for The Superior Oil Co.

Howard E. Wahrenbrock, Washington, D. C. (Richard A. Solomon, Gen. Counsel, Leo E. Forquer, Asst. Gen. Counsel, Francis J. Gilmore and Leonard Poryles, on the brief), for respondent Federal Power Commission.

C. Frank Reifsnyder, Washington, D. C. (Allen R. Grambling, Hardie, Grambling, Sims & Galatzan, El Paso, Tex., Hogan & Hartson, George D. Horning, Jr., Patrick G. Sullivan, Washington, D. C., on the brief), for El Paso Natural Gas Co.

John T. Murphy, San Francisco, Cal. (Richard E. Tuttle, Chief Counsel, J. Calvin Simpson, Senior Counsel, San Francisco, Cal., on the brief), for the People of the State of California and the Public Utilities Commission.

Malcolm H. Furbush, San Francisco, Cal. (F. T. Searls, San Francisco, Cal., on the brief), for intervenor-respondent Pacific Gas and Elec. Co.

William L. Cole, Los Angeles, Cal. (J. David Mann, Jr., John E. Holtzinger, Jr., William E. Zeiter, Frederick Moring, Morgan, Lewis & Bockius, Philadelphia, Pa., and Washington, D. C., John Ormasa, Milford Springer, Los Angeles, Cal., on the brief), for Southern California Gas Co. and Southern Counties Gas Co.

William T. Coleman, Jr., Robert W. Maris, Richardson Dilworth, Harold E. Kohn, Dilworth, Paxson, Kalish, Kohn & Dilks, Philadelphia, Pa., for the Philadelphia Gas Works Division of The United Gas Improvement Co.

Before STALEY, GANEY and SMITH, Circuit Judges.

WILLIAM F. SMITH, Circuit Judge.

These cases are before this Court on separate petitions to review an order [1] issued by the Commission in consolidated proceedings under the Natural Gas Act, 15 U.S.C.A. § 717 et seq. The parties, in addition to the petitioners and the respondent, are several intervenors, including the El Paso Natural Gas Company. While the petitioners attack the validity of the order on substantially similar grounds, their positions are not identical in all respects. We believe that under these circumstances the separate treatment of each case will contribute to a better understanding of the questions raised.

SHELL OIL COMPANY v. FEDERAL POWER COMMISSION, No. 14431

Shell Oil Company, a producer of natural gas, and the intervenor El Paso Natural Gas Company, an interstate pipeline distributor, were parties to thirteen basic contracts by the terms of which the former agreed to sell and deliver to the latter, at mutually agreed upon prices per MCF (thousand cubic feet), natural gas [2] produced in specified geographical areas. These contracts, filed pursuant to § 4(c) of the Act, 15 U.S.C.A. § 717c(c), and the pertinent regulations, were designated Gas Rate Schedules Nos. 16, 17, 18, 19, 20, 33, 34, 40, 41, 95, 108, 134 and 142, respectively.

Each of the contracts contained what is known in the industry as a favored nation clause providing for a price increase to Shell if El Paso at any time entered into an agreement with another seller for the purchase of gas, from with-

in a specified geographical area, at a price higher than that being paid Shell under existing contracts. The said clause provided that after the new agreement became effective El Paso was required to pay Shell a unit rate comparable to that paid to the other seller.

The favored nation clause in each of the said contracts prescribes certain factors to be considered in the determination of price comparability. The following is typical.

" * * * In determining whether the price payable under such other contract is 'higher' than the price payable for gas under this agreement, due consideration shall be given to the *provisions of this agreement* as compared with such other contract as to quality of gas, delivery pressures, gathering and compressing arrangements, *provisions* regarding measurement of gas * *, taxes payable on or in respect to gas delivered and *all other pertinent factors.*" (Emphasis supplied).

In 1958, while the basic contracts were in effect, El Paso entered into written agreements for the purchase of gas from the West Texas Gathering Company, a gatherer and transporter of gas in the designated geographical area, deliveries thereunder to commence on December 26, 1958. These agreements provided for the payment of a unit price per MCF deemed by Shell to be higher than the unit prices paid to it under the basic contracts.

In March of 1959, pursuant to § 4(d) of the Act, 15 U.S.C.A. § 717c(d), and § 154.94 of the Regulations, Shell tendered to the Commission for filing a series of "change in rate" schedules. These schedules, alleging that the favored nation clauses of eleven of the contracts had been activated by the West Texas agreement, proposed an increase of the rates established earlier by eleven of the schedules hereinabove enumerated.

1. Opinion Nos. 382, 29 FPC 498 (March 15, 1963) and 382A, 29 FPC 851 (April 26, 1963).

2. Residue, casinghead and gas well.

Thereupon El Paso formally protested the acceptance of the schedules on the ground that the proposed increases lacked contractual support and were therefore unilateral and unlawful. Shell filed answers to the said protests.

On April 9 and 20, pursuant to § 4 (e) of the Act, 15 U.S.C.A. § 717c(e), the Commission issued orders suspending the schedules, deferring the use thereof until September 13, 1959, and directing hearings "concerning the lawfulness of the proposed increased rates and charges." At the expiration of the period of suspension the proposed rates became effective and were thereafter collected subject to the refund of the amounts in excess of the existing rates if the proposed increases were found to be unlawful.

While the proceedings were pending, Shell and El Paso negotiated a compromise which was made the subject of written amendatory agreements providing for the sale of gas at prices higher than those established by the basic contracts but lower than those proposed by the "change in rate" schedules. These agreements recited that they were "made and entered into AS OF THE 26TH DAY OF OCTOBER, 1959," but it is conceded that they were "not actually signed until the early part of 1961." They provided that the amendments, including the rate changes, were to be made effective "as of January 1, 1960." However, the agreements were not tendered to the Commission for filing until March 31, 1961, fifteen months after the specified effective date. The schedules were suspended for a period of only one day and became effective on May 2, 1961. The rates were thereafter collected subject to refund if, after hearing, the Commission determined that they were unlawful.

On June 26, 1961, and on its own motion, the Commission issued an order directing Shell and the producers in the companion cases to show cause why

    (a) the cases should not be consolidated for public hearing;

    (b) the cases should not be heard solely on the issue as to whether the proposed rate increases were contractually supported;

    (c) in view of the record and opinion in Pure Oil Company, 25 FPC 383 (subsequently affirmed in Pure Oil Company v. Federal Power Commission, 299 F.2d 370, 7th Cir. 1962), the Commission should not find that the favored nation clauses had not been activated by the West Texas agreement; and

    (d) appropriate refunds should not be ordered.

The cases were consolidated and in due course came on for hearing before the Presiding Examiner. Shell objected to the Commission's jurisdiction on grounds hereinafter considered but, reserving its objection, participated in the hearings. It should be noted that the hearings contemplated by the orders of April 9 and 20, were deferred.

After extensive hearings, and on the basis of the record and the Examiner's Decision,[3] the Commission found, in effect: (1) that, taking into consideration the relevant factors, the prices paid by El Paso under the West Texas agreements were not "higher," within the meaning of the favored nation clauses, than those payable to Shell under the basic agreements; (2) that the favored nation clauses were therefore not activated by the West Texas agreements; and (3) the "change in rate" schedules tendered for filing in March of 1959, supra, lacked contractual support and were therefore unilateral. The Commission concluded that absent such support the proposed rate increases were "not justified." The "change in rate" schedules were rejected and Shell was ordered to refund all amounts collected, including the amounts collected under the amendatory agreements, in excess of the amounts collectible under the basic agreements.

Shell here contends, as it did in the proceedings below, that the Commission lacked jurisdiction to conduct a hearing

---

3. The decision was modified and, as modified, adopted.

on and determine the issue raised by El Paso's protest that the "change in rate" schedules were not contractually supported. It is argued first, that the issuance of the suspension orders on April 9 and 20, constituted "an acceptance" of the schedules for filing and a "rejection" of the protest; second, that the said orders were final and reviewable, subject only to the right to seek rehearing under § 19(b) of the Act, 15 U.S.C.A. § 717r(b); and third, that upon failure of El Paso to seek review in the manner and within the time prescribed by statute the "acceptance" became final and precluded any further action by the Commission on the issue raised by the protest. These arguments are clearly without merit.

Section 4(e) of the Act, supra, empowers the Commission to suspend the operation of new schedules and "to enter upon a hearing concerning [their] lawfulness" either upon its own initiative or the complaint of a "gas distributing company" such as El Paso. Where, as here, an interested party lodges a protest against the proposed increase of contractually established rates, a hearing is required. See Mississippi River Fuel Corp. v. Federal Power Commission, 202 F.2d 899 (3rd Cir. 1953); Willmut Gas & Oil Company v. Federal Power Commission, 294 F.2d 245, 248, 249 (D.C.Cir. 1961), cert. den. 368 U.S. 975, 82 S.Ct. 477, 7 L.Ed.2d 437. The Commission is without authority to summarily reject the protest and accept the new schedules for filing. Ibid. Since the Act prohibits a unilateral increase of contract rates, United Gas Pipe Line Co. v. Mobile Gas Corp., 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956), it was incumbent upon the Commission to conduct a hearing and determine whether the proposed increases were contractually supported.

The suspension orders here in question are procedural and interlocutory and contain no provision which may be construed as either a resolution of the issue raised by the protest or an acceptance of the schedules for filing. They acknowledged that the schedules had been "tendered for filing," suspended the operation of the schedules for the statutory period, and directed a hearing as to the lawfulness of the proposed increases. The orders were not final and reviewable. Federal Power Commission v. Metropolitan Edison Co., 304 U.S. 375, 383–385, 58 S.Ct. 963, 966, 967, 82 L. Ed. 1408 (1938); City of Corinth v. Federal Power Commission, 268 F.2d 10 (5th Cir. 1959), cert. den. 361 U.S. 900, 80 S.Ct. 209, 4 L.Ed.2d 156; Texas Gas Corporation v. Federal Power Commission, 250 F.2d 27 (D.C.Cir. 1957); Humble Oil & Refining Co. v. Federal Power Commission, 236 F.2d 819 (5th Cir. 1956), cert. den. 352 U.S. 967, 77 S.Ct. 354, 1 L.Ed.2d 321. The obvious purpose of the orders was to maintain the status quo between Shell, as the seller, and El Paso, as the buyer, pending the Commission's exercise of its statutory authority. The orders did not constitute a jurisdictional bar to a hearing restricted to the issue raised by the protest; in fact, they specifically directed that hearings be held.

Shell challenges the validity of the Commission's determination that the prices payable under the West Texas agreement were not "higher" than those payable under the Shell agreements. It is here maintained that the determination was based, at least in part, upon a comparison and consideration of factors[4] which were not the subject of contract. It is contended first, that the evidence as to these factors was inadmissible, and second, that without it the Commission's factual determination lacked support in the record. Shell does not argue that the extrinsic factors considered were not relevant, but does argue that in the absence of any ambiguity in the favored nation clauses the Commission was required to confine its inquiry to a comparison and consideration of the provisions of the respective contracts. The argument rests on a narrow

4. The location of reserves, deliverability, etc.

construction of the said clauses and particularly the last phrase "and all other pertinent factors."

■ This phrase, read in the context of the sentence in which it appears, must be interpreted to mean other factors relevant to the issue of price comparability, whether or not set forth in the respective contracts. This interpretation is in accord with that adopted by the Court of Appeals for the Seventh Circuit, Pure Oil Company v. Federal Power Commission, 299 F.2d 370, 373 (7 Cir. 1962), in a case involving the construction of a substantially identical clause. We deem this construction consistent with the manifest purpose of the favored nation clause.

Shell argues that in the above cited case the Court held that evidence of extrinsic factors was admissible because of an admitted ambiguity in the contract. There is nothing in the case to indicate that this was the basis of the Court's decision. The opinion states, at page 373 of 299 F.2d, "we perceive no error in the legal conclusion, inherent in the Commission's determination, that the comparability clauses require consideration and comparison of all factors, whether or not the express subject of contract provision, * * *." This language was used in defining the scope of the phrase "all other pertinent factors."

Shell maintains that the Commission lacked authority to order the refund of any portion of the amounts collected under the amendatory agreements. It is argued that the "change of rate" schedules, filed in March of 1959, were superseded by the amendatory agreements, filed on March 31, 1961, and that Shell had a right to retain all amounts collected thereunder after January 1, 1960, the effective date mutually agreed upon by the parties to the agreements. It is further argued that the Commission's action was an unwarranted interference with the allegedly lawful right of Shell and El Paso to retroactively amend existing contract rates by mutual agreement. These arguments, considered in the light of the pertinent provisions of the Act, must be dismissed as without merit.

■ The Act impliedly recognizes the right of a natural gas producer and a distributor, such as Shell Oil and El Paso, to initially establish a rate schedule by mutual agreement, subject only to the right of the Commission to modify any rate determined by it to be "unjust, unreasonable, unduly discriminatory, or preferential * * *" § 5(a), 15 U.S.C.A. § 717d(a). However, § 4(d), supra, prohibits any change in existing rates except in the manner therein provided. United Gas Pipe Line Co. v. Mobile Gas Corp., 350 U.S. 332, 338, 340, 76 S.Ct. 373, 377, 378 (1956). The said section reads in pertinent part as follows: "Unless the Commission otherwise orders, no change shall be made by any natural-gas company in any such rate, * * * or contract relating thereto, EXCEPT AFTER THIRTY DAYS' NOTICE TO THE COMMISSION and to the public." (Emphasis supplied). The section further provides that the notice shall state "the time when the change or changes WILL GO INTO EFFECT." (Emphasis supplied). The purpose of the thirty day notice is to afford the Commission a reasonable period within which to determine whether to exercise its statutory powers. United Gas Co. v. Mobile Gas Corp., supra, 342 of 350 U.S., 379 of 76 S.Ct.

Section 4(e) empowers the Commission not only to enter upon a hearing as to the "lawfulness" of proposed rate increases but also to suspend the operation of the rate schedules, pending the hearing, for a period of not more than five months. The said section authorizes the Commission "(1) to preserve the status quo pending review of the new rate by suspending its operation for a limited period, and (2) thereafter to make its order retroactive, by means of the refund procedure, TO THE DATE THE CHANGE BECAME EFFECTIVE." (Emphasis supplied). United Gas Co. v. Mobile Gas Corp., supra, 341 of 350 U.S., 379 of 76 S.Ct.

■■ When § 4(d) and (e), supra, are read together, as they must be, it

seems reasonably clear that a "change in rate" schedule must be prospective in operation. "Changes in previously filed rates or contracts must be filed with the Commission at least 30 days BEFORE THEY ARE TO GO INTO EFFECT," United Gas Co. v. Mobile Gas Corp., supra, 338 of 350 U.S., 377 of 76 S.Ct., unless the Commission, for good cause shown, otherwise orders. § 4(d). (Emphasis supplied). If the proposed rate changes are suspended under § 4(e), they may not be made effective until after the expiration of the suspension period. Hope Natural Gas Co. v. Federal Power Commission, 196 F.2d 803, 807–809 (4th Cir. 1952), reh. den. 197 F.2d 522; and see Atlantic Rfg. Co. v. Pub. Serv. Comm'n., 360 U.S. 378, 389, 79 S.Ct. 1246, 1253, 3 L.Ed. 2d 1312 (1959); State Corp. Commission of Kan. v. Federal Power Commission, 215 F.2d 176, 182, 183 (8th Cir. 1954). If the rate changes are thus made effective, the amounts thereafter collected in excess of the existing rates are subject to the refund procedures of § 4(e) if the rates are found to be unlawful.

We find nothing in the Act which authorizes a natural gas company to retroactively amend existing rates either by contract or otherwise. The parties to a contract for the purchase and sale of natural gas may amend their contract so as to provide for a rate increase and the date when the increase is to become effective. However, the exercise of this right is subject to the authority of the Commission to determine the lawfulness of the increase and to postpone its effective date until after the expiration of a prescrbed period of suspension. It is well settled that relevant statutes and regulations existing at the time a contract is made become a part of it and must be read into it as if expressly incorporated therein. The rule is particularly applicable where, as here, the object of the statute is the protection of the public interest.

We hold that proposed rate increases may not be made effective prior to the date on which notice thereof is filed as required by § 4(d). Continental Oil Company v. Federal Power Commission, 236 F.2d 839, 843 (5th Cir. 1956), cert. den. 352 U.S. 966. We hold further that notwithstanding the mutual agreement of the interested parties a rate increase suspended pursuant to § 4(e) may not be made retroactively effective during the period of suspension. Hope Natural Gas Co. v. Federal Power Commission, supra, 807 of 196 F.2d.

## SUPERIOR OIL COMPANY

### No. 14507

Superior Oil Company, a producer of natural gas, and the intervenor El Paso, were parties to five basic contracts for the sale and purchase of natural gas at mutually agreed upon prices per MCF. These contracts, filed pursuant to § 4(c) of the Act, supra, and the pertinent regulations, were designated Gas Rate Schedules Nos. 44, 8, 9, 10 and 30, respectively. These contracts are similar to those between Shell and El Paso and contain substantially identical favored nation clauses.

In March of 1959, pursuant to § 4(d) of the Act and § 154.94 of the Regulations, supra, Superior tendered to the Commission for filing a "change in rate" schedule designated as a supplement to Gas Rate Schedule No. 44, supra. The proposed price increases therein set forth were based on the alleged activation of the favored nation clause by the West Texas agreement. Thereafter, in October of 1959, Superior tendered to the Commission for filing additional "change in rate" schedules designated as supplements to Gas Rate Schedules Nos. 8, 9, 10 and 30, respectively, supra. The proposed price increases therein set forth were based on the alleged activation of the favored nation clauses by the "change in rate" schedules filed by Shell which became effective on September 13, 1959. The Superior "change in rate" schedules were further amended so as to bring the rates therein set forth in line with the rates being paid Shell under the amendatory agreements with El Paso and the rates being paid the Hunt Interests under similar agreements, infra.

The acceptance of the Superior schedules was protested by El Paso on the same grounds urged in its protests against the Shell schedules. Pursuant to § 4(e) of the Act, supra, the Commission issued the usual suspension orders temporarily deferring the use of the schedules and directing hearings thereon. The proposed rate changes became effective at the end of the suspension periods and were thereafter collected subject to refund. While the proceedings were pending the Commission issued the order to show cause to which reference has heretofore been made.

■■■ The Commission found in effect first, that the prices paid by El Paso under the West Texas agreements were not "higher," within the meaning of the favored nation clause, than those payable to Superior under Gas Rate Schedule No. 44; second, that the favored nation clause was not activated by the West Texas agreement; and third, that the "change in rate" schedule tendered for filing in March of 1959, lacked contractual support and was therefore unilateral. The Commission further found that since the "change in rate" schedules filed by Shell lacked contractual support and where therefore unlawful, they could not activate the favored nation clauses contained in Gas Rate Schedules Nos. 8, 9, 10 and 30, respectively. We agree with the Commission that proposed rate increases cannot be contractually supported by schedules found to be unlawful.

The Commission concluded that the proposed rate increases contained in the "change in rate" schedules filed by Superior were "not justified." The said schedules were rejected and Superior was ordered to refund to El Paso all amounts collected thereunder in excess of the amounts collectible under the then existing schedules. The final order of the Commission is challenged as erroneous on several grounds.

Superior argues, as did Shell, and on substantially similar grounds, first, that the Commission lacked jurisdiction to consider and determine the issue raised by El Paso's protests; second, that in the absence of any ambiguity in the favored nation clauses the Commission was required to decide the issue of price comparability solely on a consideration and comparison of the provisions of the respective contracts; and third, that the consideration of extrinsic factors and the admission of evidence relevant thereto were erroneous. These arguments are fully answered in our discussion of the Shell case.

■■■ Superior further maintains that under the facts and circumstances of this case the Commission lacked authority to order the refund of any part of the amounts collected under the "change in rate" schedules. It is argued that until there has been a determination as to the "justness and reasonableness" of the rates, the issuance of the refund order was premature and erroneous. The validity of this argument is necessarily dependent upon the construction to be given to the pertinent provisions of § 4(e), supra.

The pertinent provisions of the said section read as follows:

"If the proceeding has not been concluded and an order made at the expiration of the suspension period, on motion of the natural-gas company making the filing, the proposed change of rate, * * * shall go into effect. Where increased rates * * * are thus made effective, the Commission may, by order, require the natural-gas company to furnish a bond, * * *, to refund any amounts ordered by the Commission, * * *, and, upon completion of the hearing and decision, to order such natural-gas company to refund, with interest, the portion of such increased rates * * * by its decision found not justified." (Emphasis supplied).

Superior argues that the term "not justified," as used in the quoted provision, is synonymous with "not just and reasonable." The argument is predicated upon a distorted interpretation of § 4 (d) and an erroneous view of the cases cited in support of it. Absent a statu-

tory definition the term *"not justified"* must be given its ordinary, plain and generally accepted meaning. That meaning is in accord with the manifest purpose of the statute.

Section 4(e) vests the Commission with broad powers "to enter upon a hearing concerning the lawfulness" of proposed rate changes; to suspend operation of the proposed increases pending hearing but for a period not to exceed five months; and, after hearing and decision, to order a refund of "the portion of such increased rates * * * found not justified." The term *"not justified,"* read in the context of § 4 as a whole, is not limited in its application to increased rates found by the Commission to be "not just and reasonable," but also includes increased rates otherwise found to be unlawful. United Gas Co. v. Mobile Gas Corp., supra. Where, as here, the Commission has decided that a proposed rate increase is unlawful because of the lack of contractual support, it may order an appropriate refund retroactive to the date the change became effective. Ibid.

■■■ Superior contends that absent a determination that the increases were "not just and reasonable," the Commission lacked authority to enter a refund order. It is argued that the terms and conditions of certain indemnity bonds, furnished pursuant to § 4(e), barred issuance of the refund order and that the only remedy available to El Paso was a common law action on the bonds. This argument is without merit and the cases cited in support of it are clearly inapposite. The cited cases involved suits for the recovery of overpayments made pursuant to state regulatory orders later held to have been unlawful. Therein the rights and liabilities of the parties were determined under local law and were in no way dependent on any provision of the Natural Gas Act.

Each of the bonds in question contains the following provision:

"The Superior Oil Company obligates itself and hereby agrees that it will refund at such times, and in such amounts, to the persons entitled thereto, and in such manner as may be required by *Final Order of the Commission*, the portion of such increased rate found by the Commission in this proceeding *not justified*, together with interest thereon at the rate of 6 per cent per annum from the date of payment to it until refunded;" (Emphasis supplied).

There is nothing in this or any other provision of the bonds inconsistent with the authority of the Commission to issue a refund order; in fact, Commission action is a prerequisite to liability under the bonds. We should add that refund orders are not self-executing but are enforceable in a suit in equity or an action at law authorized by § 22 of the Act, 15 U.S.C.A. § 717u.

After Superior had presented its main case and El Paso had presented its defense, Superior made a proffer of evidence, the alleged purpose of which was to establish that the West Texas Company was the agent for El Paso in the purchase of gas from producers. The proffer was rejected on the ground that the evidence was not relevant and material to any issue raised by Superior in its main case. Superior now argues that the evidence was admissible in rebuttal and its exclusion was prejudicial error. We do not agree.

■■■ It has been uniformly recognized that rebuttal evidence is that which tends to refute, counteract or otherwise overcome new matter introduced by an adverse party on defense. We have examined Superior's written offer of proof in the light of the evidence introduced by El Paso and find that the proffered evidence did not qualify as rebuttal. The evidence of El Paso was relevant and material to the issue of price comparability raised by Superior in its main case. The evidence proffered by Superior was clearly in support of an additional ground on the basis of which Superior intended to urge dismissal of El Paso's protest. We are of the view that under the circumstances the admission or ex-

clusion of the proffered evidence was a matter within the discretion of the Commission. The exclusion of the evidence was not an abuse of the discretion and therefore did not constitute reversible error.

Superior further argues that the exclusion of the proffered evidence was a denial of procedural due process. The question raised by this argument must be examined in the light of the settled principles which govern the proceedings of administrative agencies.

The parties to a proceeding before an administrative agency such as the Commission are entitled to: first, due notice as to the nature and scope of the contemplated inquiry; second, an opportunity to be heard and present evidence; and third, a full hearing in conformity with the fundamental concepts of fairness. See Federal Comm'n v. Pottsville Broadcasting Co., 309 U.S. 134, 142–144, 60 S.Ct. 437, 441–442 (1940); R.R. Comm'n v. Pacific Gas Co., 302 U.S. 388, 393–400, 58 S.Ct. 334, 337–341, 82 L.Ed. 319 (1938). A departure from these minimal requirements is a denial of procedural due process, but we find no such departure by the Commission in the instant case.

The Commission's order to show cause adequately informed Superior and other producers as to the nature and scope of the proposed hearing. This order directed the parties to show cause why, inter alia, in view of the record and accompanying order in Pure Oil Company, 25 FPC 383 (subsequently affirmed, Pure Oil Co. v. Federal Power Commission, 299 F.2d 370 (7th Cir. 1962)), the Commission should not find that the petitioner's favored nation clauses had not been activated and that the rate increases based thereon were therefore without contractual support. This order, framing the issues to be considered and decided, was within the Commission's discretionary power. F.P. C. Rules of Practice and Procedure, § 1.6(d), 18 C.F.R. § 1.6(d); Federal Comm'n v. Pottsville Broadcasting Co.,

supra. The parties were directed to show in what respects their cases differed from that of the Pure Oil Company and why they warranted a different result.

The intercorporate relationship between El Paso and West Texas had been considered in the Pure Oil case, 25 FPC 383, 387, wherein the Commission rejected the producers' contention that West Texas was a "dummy" corporation subject to the control of El Paso. The evidence proffered by Superior in the instant case was intended to establish an agency relationship as distinguished from the intercorporate relationship which the producers attempted to establish in the Pure Oil case. Assuming, for the purpose of argument, that a meaningful distinction can be made, we are of the opinion that the proffered evidence should have been presented in Superior's main case and not held in reserve until rebuttal. Under these circumstances we cannot say that the exclusion of the evidence was in derogation of Superior's right to a fair hearing.

Superior maintains that the Commission's decision is not supported by the record, even when all of the evidence extrinsic to the contracts is considered. Bearing in mind the limited scope of review under § 19, we have examined the record in its entirety and find that the Commission's factual determinations are supported by substantial evidence and are therefore conclusive.

## HUNT OIL COMPANY, ET AL.

### No. 14506

The petitioners in this case, hereinafter identified as the Hunt Interests, and El Paso, were parties to a series of basic contracts substantially similar in all respects to those held by Shell and Superior. These contracts, filed pursuant to § 4(c) of the Act and the pertinent regulations, were designated Gas Rate Schedules Nos. 1, 3, 6, 15, 31, 33 and 36, respectively. In May of 1959, the Hunt Interests filed a series of

"change in rate" schedules [5] designated, with two exceptions, as Supplement No. 6. The rate increases therein proposed were based on the alleged activation of the favored nation clauses by the West Texas agreement. The proposed rate increases were protested by El Paso on the same grounds urged in its protest against the Shell and Superior schedules. The said schedules were made the subject of the usual suspension order by the terms of which the rate increases were to become effective on October 30, 1959.

While the proceedings were pending and prior to the effective date of the "change in rate" schedules, Hunt Interests and El Paso entered into an amendatory agreement providing for the sale of gas at prices higher than those established by the basic contracts but lower than those proposed by the "change in rate" schedules, the said prices to become effective on January 1, 1960. The amendatory agreement, accompanied by appropriate notices of change in rate, was tendered to the Commission for filing on December 7, 1959, and was designated Supplement No. 7. The change in rate schedules, based on the alleged activation of the favored nation clauses, were thus superseded. The operation of the notices, treated as "change in rate" schedules, was suspended and the use of the increased rates deferred for a period of five months until June 7, 1960.

Simultaneously with the execution of the said amendatory agreement, Hunt Interests and El Paso agreed orally to make the new contract prices effective as of October 30, 1959. The oral agreements were made the basis of "change in rate" schedules which were tendered to the Commission for filing on February 15 and 16, 1960, and, with one exception, were designated as Supplements Nos. 1 to 6, to the original Gas Rate Schedules, supra. These supplements superseded the "change in rate" schedules based on the written amendatory agreement (Supplement No. 7), which was then designated Supplement Nos. 2 to 6. The supplemental schedules were suspended for a period of one day and were permitted to become effective on March 17 and 18, subject to the refund procedures of § 4(e). Thereafter, by order of June 2, 1960, the Commission authorized the withdrawal of the "change in rate" schedules filed in May of 1959, and the substitution therefor of the said supplements, subject, however, to the prior suspension orders.

After the hearings hereinabove referred to, the Commission found, as in the case of Shell and Superior, first, that the prices payable by El Paso under the West Texas agreements, were not "higher" than those payable to the Hunt Interests under the basic agreements; second, that the favored nation clauses were not activated by the West Texas agreement; and third, that the "change in rate" schedules tendered for filing in May of 1959, lacked contractual support and were therefore unilateral. The Commission further found that the increased prices, admittedly paid the Hunt Interests between October 30, 1959 and March 17, 1960, pursuant to the amendatory agreements, were not contractually authorized during the said period. The Commission thereupon ordered the refund of those portions of the rate increases collected during the period. The legality of the order is challenged on alternative grounds.

Hunt Interests maintain that the Commission's determination that the price increases were not contractually authorized is erroneous. It is argued that the price increases were authorized by the written and oral agreements and were effective on and after October 30, 1959. It is further argued that under the circumstances the refund order is illegal. The cogency of these arguments is dependent upon the legal effect of the agreements construed in the light of the pertinent provisions of the Act.

---

5. There were others filed on later dates but there appears to be no reason to make reference to them in this opinion.

While the parties to a contract for the sale of gas may mutually agree, as they did here, to an amendment providing for rate increases and the date when the increases are to become effective, the right to do so is subject to the statutory authority of the Commission. Notwithstanding the agreement of the parties to the contrary, the proposed rate increases cannot become effective until after the expiration of the thirty day notice period unless the Commission, for good cause shown, otherwise orders. Section 4(d) and the cases hereinabove cited. If the rate increases are suspended and the use thereof deferred, the increases may not be made effective until after the expiration of the period of suspension. Section 4(e) and the cases hereinabove cited. It follows that the Commission's determination that the increases were not contractually authorized prior to March 17 and 18, 1960, was correct.

Hunt Interests maintain that if the price increases were not authorized by the amendatory agreements, such increases were supported by the basic contracts, the favored nation clauses of which were activated by the West Texas agreement. This argument is fully answered in our discussion of the Shell case. We have considered the other arguments advanced on behalf of the Hunt Interests and find them without merit; in fact, one of them is fully answered in our discussion of the Shell case.

### SUN OIL COMPANY

#### No. 14434

The arguments of Sun are similar to those of Shell. There being no significant difference between the facts and issues involved in this case and those involved in the Shell case, the disposition of this petition is governed by our decision in the companion cases.

The order of the Commission will be affirmed.