CONTINENTAL OIL COMPANY,
Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

Nos. 15706–15721.

United States Court of Appeals
Fifth Circuit.

June 30, 1956.

Wm. R. Choate, W. V. Ballew, Jr., Houston, Tex., Roland B. Voight, Wallace B. Clift, Jr., Houston, Tex., Lloyd F. Thanhouser, Baker, Botts, Andrews & Shepherd, Houston, Tex., of counsel, for petitioner.

Willard W. Gatchell, Gen. Counsel, Federal Power Commission, Abraham R. Spalter, Atty., Washington, D. C., for respondent.

Before BORAH, RIVES and BROWN, Circuit Judges.

BORAH, Circuit Judge.

On motion of petitioner and pursuant to order of Court, this case was consolidated with fifteen other causes, each styled Continental Oil Co. v. Federal Power Commission, Nos. 15,706 to 15,721 both inclusive, and comes to us on the printed record in No. 15,706. All of the cases involve petitions for review of orders of the Federal Power Commission which relate to proposed changes in rates filed by petitioner in connection with the increase in the Texas gas production tax which became effective on September 1, 1954. The contracts in question, the pro-

posed rate increases, and the orders of the Commission making effective such rate increases in November, 1954, are for all intents and purposes identical and the grounds on which petitioner attacks each of these orders are the same.

The facts to the extent that they need be stated are these: The Commission on July 16, 1954, issued Order 174 in which it promulgated rules and regulations applicable to "independent producers" of natural gas subject to the jurisdiction of the Commission. These rules and regulations provided for the filing of rate schedules on or before October 1, 1954, in which were to be set forth the terms and conditions of service and all rates and charges effective on and after June 7, 1954, for the transportation and sale of natural gas in interstate commerce.[1] "Rate schedule" was defined in the regulations to mean "the basic contract and all supplements or agreements amendatory thereof, effective and applicable on and after June 7, 1954 * * *" And with respect to the periodic increases contained in such basic contracts the regulations provided that: "The operation of any provision of the rate schedule providing for future or periodic changes in the rate, charge, classification, or service after June 7, 1954, or the operation of any like provision in any initial rate schedule filed after June 7, 1954, shall constitute a change in rate schedule." These regulations pursuant to the provisions of Section 4(d) of the Act, 15 U.S.C.A. § 717c(d), further provided that, with certain exceptions, no change could be made in any such rate schedule without first filing a notice of change in rate not less than thirty nor more than ninety days prior to the effective date thereof. One of the exceptions which is pertinent here is Section 154.94 of the regulations promulgated in Order 174, the fourth paragraph of which reads as follows: "*Any change in rate schedule, rate, charge, classification, or service pro-*

1. See detailed statement in Magnolia Petroleum Co. v. Federal Power Commission, 5 Cir., 236 F.2d 785, relating to the series of 174–Orders which were issued by the Commission following the Supreme Court's decision in Phillips Petroleum Co. v. State of Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035.

vided in a rate schedule *in effect on June 7, 1954, which by the terms of said rate schedule is to be operative after June 7, 1954, but prior to September 15, 1954, may be filed within said period without thirty days' prior notice, which notice is hereby waived.* If the Commission in any case shall find it necessary to suspend such proposed change, the suspension period will begin with the designated effective date of such change." [2]

On August 6, 1954, the Commission issued Order 174–A by which it amended, modified and superseded Order 174. The superseding order retained the October 1 filing date, but it amended in material respect the fourth paragraph of Section 154.94 to provide that notices of changes in rates to become effective between June 7 and September 15, 1954, "may be filed on less than thirty days' prior notice." Thereafter, on September 24, the superseding Order 174–A was amended by extending the time for filing rate schedules and applications for certificates of convenience and necessity from October 1 to December 1, 1954, but no further change was made in Section 154.94 and no extension of time for filing notices of change in rate schedules was granted by this order.

In its petition for review petitioner herein alleged that it had on November 26, 1954, filed with the Commission a petition in which it prayed for an order declaring that its sales under a certain contract dated January 25, 1950, for the sale of natural gas to Texas Illinois Natural Gas Pipeline Company were not sales in interstate commerce. Thereafter and on November 29, pursuant to the aforementioned regulations, petitioner under protest and with jurisdictional reservations filed its rate schedule which consisted of the 1950 contract and all amendments and supplements thereto reflecting rates and charges in effect on June 7, 1954, for its sales to the pipeline company. On the same date, petitioner also filed a proposed change in rate schedule.

In this filing, petitioner referred to the provision of the 1950 contract which required reimbursement by the purchaser of three-fourths of any increase in gas production tax paid by petitioner, and called the Commission's attention to the fact that on September 1, 1954, the Texas occupation tax on the production of gas had been increased from 5.72% to 9% of the market value, and "proposed that such change be made effective as of September 1, 1954, for gas sold on and after such date." By letter dated April 12, 1955, issued by the direction of the Commission,[3] petitioner was advised that the Commission had waived the thirty days' notice prescribed by Section 4(d) of the Act with respect to its change in rate, and that the change was permitted to become effective as of the date of filing, that is, on November 29, 1954. Following this action by the Commission, petitioner filed a "Motion for Reconsideration, Rehearing and Superseding of Order or Ruling Issued April 12, 1955," in which it sought to have the Commission permit its proposed change in rate to become effective as of September 1, 1954. In this motion petitioner alleged that it was informed and believed that numerous other producers who filed their proposed rate changes based on the increase in the Texas production tax were granted such increase retroactive to September 1, 1954, and contended that the refusal to grant such increase to petitioner deprived it of a valuable property right without due process of law, and was unjust, unreasonable, unduly discriminatory, preferential, unlawful, arbitrary, capricious, and in violation of the Natural Gas Act. Petitioner also contended that since the Commission failed to act upon its notice of change in rate within thirty days after it was filed, the order of April 12, making the change effective on November 29, 1954, was an unlawful "suspension" of rates and was in violation of the Commission's own rules. In addition, petitioner also filed with the

---

2. All italics herein ours.

3. The Commission concedes that its action by letter in effect constitutes an order under Section 4(d) of the Act.

Commission a motion to consolidate similar motions for reconsideration in each of the aforementioned sixteen cases. Upon consideration of these motions the Commission on May 26, 1955, issued an order in which it referred to the proposed changes in rates as "covering sales of natural gas, subject to the jurisdiction of the Commission" and stated "That said motions for reconsideration and rehearing set forth no new facts and no principles of law which either were not fully considered by the Commission when it permitted the aforesaid rate schedules to become effective or which having now been considered warrant any change in, or modification of, the effective dates of such rate schedules." And having so concluded the Commission ordered that the motions for reconsideration and rehearing, as well as the motion for consolidation, be denied. Following this action of the Commission, petitioner filed the within petition for review in which it prayed that this Court vacate and remand the order of April 12 and direct the Commission to issue a new order making the change in rate effective on September 1, 1954. And it was further prayed that if the order of May 26 constitutes an adjudication of petitioner's status, the same be reversed and remanded to the Commission for adjudication pursuant to hearing on petitioner's petition for a declaratory order.

Petitioner's principal argument here is bottomed upon the contention that the Commission abused its discretion and established an unlawful and preferential disparity in rates by permitting rate changes filed by other independent producers *prior* to October 1, 1954, to become effective as of September 1, while refusing to grant the same effective date to petitioner's rate changes which were filed *after* October 1. There is, however, no claim on the part of petitioner that the facts in the cases of "numerous other producers" are either identical to or that they have any relationship to the facts in this case, and petitioner frankly concedes that all independent producers who filed such changes in rates between October

1 and December 1, 1954, were, like petitioner, also granted such increases effective as of the filing date and not on September 1, 1954 as requested. Yet, and despite the fact that there is no record before this Court which sets out the facts with respect to the "numerous other producers," we are asked to exceed our province and condemn *in vacuo* the Commission's action herein as being inconsistent with what it did in the other cases. This we are unwilling to do, as petitioner's case must be decided on the certified record and by applying the law to the facts which are before us. Section 19(b) of the Natural Gas Act, 15 U.S.C. A. § 717r(b).

■■■ The record in this case leaves us in *no* doubt that the Commission's order waiving notice and permitting petitioner's change in rates to become effective on the date of filing was issued pursuant to statutory authority and is valid. Section 4(d) of the Act provides that no change shall be made in any rate schedule except after thirty days' notice to the Commission and that the Commission for good cause shown may allow changes to take effect without requiring the thirty days' notice. This simply means that in the absence of a waiver of the requisite thirty days' prior notice, a change in rate may go into effect no sooner than thirty days after a notice of change is filed. Consequently, under the plain terms of Section 4(d), absent a waiver of notice by the Commission, the effective date of petitioner's November 29 filing would have been December 29, 1954, but no date previous thereto. But here, there was such a waiver and the Commission by its order of April 12, 1955, exercised the discretion delegated to it by Section 4(d) and so advised petitioner by stating that "notice is hereby waived to permit such rate schedule to be effective as of the date of filing * * *" Accordingly, petitioner was authorized to collect the increased rate during the entire thirty days' period prior to December 29. Having thus received the benefit of the discretion which was exercised in its favor, petitioner is

in no position to complain that it has been deprived of any of its rights under Section 4(d) of the Act.

██ Petitioner's further claim that the Commission's action was invalid under the regulations upon which petitioner had in good faith relied is equally without merit. Petitioner did not file its notice of change in rate within the period specified in Section 154.94 of the regulations promulgated in Order 174. On the contrary, petitioner filed its change in rate more than three months after Order 174 had been rescinded and superseded by Order 174–A. And as we have previously set forth in detail above, that superseding order amended the fourth paragraph of Section 154.94 in two material respects: (1) the automatic waiver of the thirty days' prior notice which was contained in Order 174 was rescinded, and (2) the provision in Order 174 that a change in rate schedule (which is to be operative after June 7, 1954, but prior to September 15, 1954) "may be filed *within said period without thirty days' notice, which notice is hereby waived*" was amended and as so amended provided that such changes "may be filed *on less than thirty days' prior notice.*" Thus it is apparent that when petitioner filed its change in rate on November 29, 1954, it was not entitled as a matter of right to the automatic waiver of the requisite prior notice which had been allowed by the rescinded and superseded regulations. It could only claim that it was entitled to the right to file on "less than thirty days' prior notice" for the all-sufficient reason that the superseding regulations under which it filed clearly required "prior notice."

██ Petitioner next relies upon that provision of the Act which requires that notices of change in rate specify the time when the change will go into effect and pointing to the fact that there is nothing in the Act or in the Commission's orders which requires that the effective date shall be other than the date designated by the independent producer, vigorously contends that the Commission violated both the Act and the regulations by re-fusing to honor its designation of September 1, 1954, as the effective date of its change in rate. We do not at all agree. Section 4(d) of the Act provides that the change must be filed "at least 30 days *before* they are to go into effect," United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. 332, 342, 76 S. Ct. 373, 377. And as we have stated above Section 154.94 of the regulations under which petitioner filed its notice of change in rate does not dispense with "prior notice" but merely permits filing the notice of change in rate "on less than thirty days' prior notice." Since it thus affirmatively appears that *prior* notice is required, it necessarily follows that the effective date of a change in rate cannot *precede* the date on which notice is filed. Here, petitioner's designated effective date *preceded* its filing of notice of change in rate by eighty-nine days, and this being the situation there is and can be no doubt that the Commission rightly refused to honor the effective date which petitioner designated.

██ Petitioner's further and closely allied contention that the Commission's order of April 12, 1955, amounts to an unlawful suspension of its change in rate is likewise without merit. This contention is based upon the premise that petitioner's loss of revenue by reason of its inability to charge the increased rates between September 1 and November 29, 1954, was the result of the Commission's exercise of its suspension powers under the Section 4(e) of the Act. We think this argument runs counter to the plain language of Section 4(d) which states, in part, that "no change shall be made by any natural-gas company in any such rate * * * except after thirty days' notice to the Commission * * *" It also overlooks the fact that petitioner failed to timely file the notice which was required in order to give effect to its proposed change in rate schedule as of September 1, 1954, and fails to take into account the circumstance that by filing on November 29, petitioner was entitled to collect the increased rate only as of December 29, 1954, or thirty days after

the filing date. This filing was, of course, subject to the Commission's discretionary power to waive notice under Section 4(d) or to suspend the new schedule under Section 4(e) for a limited period "beyond the time when it would otherwise go into effect." Here the Commission elected to exercise its power of waiver, not its authority to suspend. And by virtue of the order petitioner enjoyed the use of its new rate schedule during the entire thirty days previous to December 29, 1954, but its right to collect that rate was never suspended beyond December 29, which was the date when it would otherwise go into effect. It follows that the Commission's order cannot be characterized as a "suspension" order, and that petitioner's loss is not attributable to the Commission's action, but to its own delay.

Petitioner next contends that if the order of May 26 is an adjudication of its status, such adjudication is unsupported by any evidence before the Commission and prejudges without a hearing petitioner's previous petition on file with the Commission for a declaration of its status. For answer we deem it sufficient to say that by using the descriptive terms "covering sales of natural gas, subject to the jurisdiction of the Commission," it was neither found nor determined that petitioner's operations or sales were in interstate commerce or that petitioner is a natural-gas company within the meaning of the Natural Gas Act.

Other matters urged by counsel have been considered but we find nothing in the record to warrant us in disturbing the orders of the Commission. For the reasons assigned, the orders complained of are affirmed, and in conformity with the order consolidating these cases, separate and like judgments will be entered in Cases Nos. 15,707 to 15,721, both inclusive.

JOHN R. BROWN, Circuit Judge, dissenting. For dissenting opinion see 236 F.2d 785.