958 F.2d 429
 294 U.S.App.D.C. 211
 CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Central Hudson Gas and Electric Corporation, Mountaineer Gas
Company, Nashville Gas Company, et al., Intervenors.
 No. 91-1127.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 28, 1992.
Decided March 10, 1992.
 
 [294 U.S.App.D.C. 212] Petition for Review of an Order of the Federal Energy Regulatory Commission.
 Harvey L. Reiter, with whom William I. Harkaway and Marc Richter, for Consolidated Edison Co. of New York, Inc., Barbara K. Heffernan and Tom Rattray, for The Berkshire Gas Co., et al., and J. Richard Tiano, for The Southern Connecticut Gas Co., were on the joint brief, for petitioners. Barbara M. Gunther also entered an appearance for petitioners.
 John Robinson, Attorney, Federal Energy Regulatory Commission, with whom William S. Scherman, General Counsel, Jerome M. Feit, Sol., and Joseph S. Davies, Deputy Sol., were on the brief, for respondent. Jill Hall, Attorney, Federal Energy Regulatory Com'n, also entered an appearance for respondent.
 
 
 1
 Michael E. Small, with whom Robert H. Benna, was on the brief, for intervenor, Tennessee Gas Pipeline Co.
 
 
 2
 Peter C. Lesch and Steve Stojic entered appearances for intervenor, Mountaineer Gas Co.
 
 
 3
 Frederick J. Killion and Donald K. Dankner entered appearances for intervenor, Central Hudson Gas and Electric Corp.
 
 
 4
 James F. Moriarty and Michael J. Manning entered appearances for intervenor, Tennessee Small General Service Customer Group.
 
 
 5
 Edward B. Myers and Gerard A. Maher entered appearances for intervenor, Orange and Rockland Utilities, Inc.
 
 
 6
 Kenneth D. Brown and James R. Lacey entered appearances for intervenor, Public Service Elec. and Gas Co.
 
 
 7
 Before MIKVA, Chief Judge; RUTH BADER GINSBURG and RANDOLPH, Circuit Judges.
 
 
 8
 Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.
 
 RUTH BADER GINSBURG, Circuit Judge:
 
 9
 This case concerns the authority of the Federal Energy Regulatory Commission (Commission or FERC) to accelerate the effective date of a natural gas pipeline's out-of-cycle purchase gas adjustment (PGA).[1] The governing prescription, section [294 U.S.App.D.C. 213] 4(d) of the Natural Gas Act, 15 U.S.C. § 717c(d), places a thirty-days' waiting period between the supplier's notice of a rate increase and the effective date of the changed rate; "for good cause shown," however, FERC may shorten or dispense with the waiting period. FERC exercised its section 4(d) authority in the controversy before us on these facts: (1) on November 30, 1990, Tennessee Gas Pipeline Company (Tennessee) filed for an out-of-cycle PGA increasing the commodity portion of its gas sales rate; (2) on December 27, 1990, the Commission accepted the PGA as filed and granted Tennessee's November 30 request for a December 1, 1990 effective date. See Tennessee Gas Pipeline Co., FERC Letter Order, Dkt. No. TQ91-2-9-000 (Dec. 27, 1990); Tennessee Gas Pipeline Co., 54 FERC p 61,165 (1991) (denying rehearing).
 
 
 10
 Petitioners Consolidated Edison Company of New York, Inc., et al. (collectively, Con Edison) are New York and New England local distribution companies who purchase portions of their gas supplies from Tennessee at rates regulated by FERC. Petitioners argue, principally, that the December 1, 1990 effective date is inconsonant with the "filed rate doctrine."[2] December 27, 1990, the date of FERC's order accepting Tennessee's filing, petitioners maintain, is the earliest effective date FERC could approve.[3]
 
 
 11
 We conclude that the Commission reasonably construed and exercised its section 4(d) authority to dispense with the thirty days' waiting period. The December 1 effective date, we hold, was not impermissibly early for the rate change Tennessee's November 30 application requested.
 
 I. The Regulatory Setting
 
 12
 Section 4(a) of the Natural Gas Act (NGA), 15 U.S.C. § 717c(a), requires that all rates charged by a natural gas company for the transportation or sale of gas be "just and reasonable." Pipelines must file their rates and rate changes with the Commission in tariffs supported by detailed cost information. Id. § 717c(c); 18 C.F.R. § 154.63. Pending Commission investigation into the lawfulness of a new or changed rate, FERC may suspend the rate for a period of up to five months; at that point, the proposed rate must be given effect. See 15 U.S.C. § 717c(e). If FERC ultimately determines, at the completion of its investigation, that the initially-suspended rate was unreasonable, however, FERC may order the seller to refund the overcharge, with interest. Id.[4]
 
 
 13
 Section 4(d), 15 U.S.C. § 717c(d), the statutory provision of principal concern in this case, states that, "[u]nless the Commission otherwise orders," no rate change shall become operative "except after thirty days' notice to the Commission and to the public." The required notice is given "by filing with the Commission ... schedules [294 U.S.App.D.C. 214] stating plainly the change ... to be made ... and the time when the change ... will go into effect." "[F]or good cause shown," the Commission "may allow changes to take effect without requiring the thirty days' notice."[5] See also 18 C.F.R. § 154.51 (Commission's rule on permitting filed changes to become effective without thirty days' notice).
 
 
 14
 Courts have read sections 4(c), 4(d), and 5(a) together as embracing for the federally regulated natural gas market the "filed rate doctrine." As declared by the Supreme Court, that doctrine generally prohibits a regulated entity from charging rates "other than those properly filed with the appropriate federal regulatory authority." Arkansas Louisiana Gas Co. v. Hall, 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981) (Arkla ). The constraints imposed by the filed rate doctrine, and the corollary proscription against retroactive ratemaking, limit both utility and regulator: "the Commission itself [may not] impos[e] a rate increase for gas already sold." Id. at 578, 101 S.Ct. at 2931; see Towns of Concord, Norwood, and Wellesley v. FERC, 955 F.2d 67, 70-72 (D.C.Cir.1992) (summarizing precedent on filed rate doctrine). According to case law accounts, the filed rate doctrine promotes certainty in the market, discourages undesirable price discrimination, and preserves the regulator's authority to determine at the threshold whether particular rates or practices are unlawful. See, e.g., Arkla, 453 U.S. at 582, 101 S.Ct. at 2932-33 ("granting the Commission an opportunity in every case to judge the reasonableness of the rate" is "clear purpose" of doctrine); Transwestern Pipeline Co. v. FERC, 897 F.2d 570, 577 (D.C.Cir.) (doctrine "allows purchasers of gas to know in advance the consequences of the purchasing decisions they make"), cert. denied, --- U.S. ----, 111 S.Ct. 373, 112 L.Ed.2d 335 (1990); cf. Maislin Indus., U.S., Inc. v. Primary Steel, Inc., 497 U.S. 116, 110 S.Ct. 2759, 2765-69, 111 L.Ed.2d 94 (1990) (in Interstate Commerce Act context doctrine has historically served to prevent unjust discrimination).
 
 
 15
 We turn next in this background section to purchase gas adjustment clauses (PGAs) of the kind that underlie this controversy. PGAs allow pipelines to recover from their customers--promptly and without the cumbersome data production FERC requires in a full section 4 rate proceeding--certain costs incurred for the acquisition of natural gas. First adopted in 1972, and amended in 1978 and 1987 in response to an increasingly volatile and competitive natural gas market, the Commission's regulations, see 18 C.F.R. §§ 154.301 et seq., instruct pipelines, if they elect to recover costs through PGAs, to submit annual estimates of their projected gas costs, with quarterly revisions. 18 C.F.R. §§ 154.304-.305. Subject to the notice provisions of section 4(d) and FERC's procedural requirements, PGA changes based on these projections ordinarily are allowed to take effect on a quarterly basis.[6] Costs thus collected are subject to challenge and Commission review in the pipeline's next annual PGA filing and, where appropriate, to FERC-ordered refund.
 
 
 16
 When market conditions diverge sharply from those anticipated in its most recent PGA filing, a pipeline may file for an "out-of-cycle" PGA. Rate reductions out-of-cycle are granted as a matter of course; the Commission assumes the existence [294 U.S.App.D.C. 215] of section 4(d) "good cause" whenever a pipeline wants to cut its price immediately. See 18 C.F.R. § 154.309(b). Rate increases, on the other hand, are approved only on a case-by-case basis. Out-of-cycle PGAs are subject to the section 4(d) notice requirements. The Commission, however, retains its authority under that provision to dispense with the thirty days' notice period for "good cause." See Revisions to the Purchased Gas Adjustment Regulations, 52 FED.REG. 43,854, 43,871 (1987).
 
 II. Analysis
 
 17
 Our review of FERC's order is guided by Chevron USA Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). See generally Office of Consumers' Counsel v. FERC, 783 F.2d 206, 218 (D.C.Cir.1986). Chevron instructs that when "Congress has directly [and unambiguously] spoken to the precise question at issue," a reviewing court must, of course, adhere to the legislators' judgment; where a statute is "silent or ambiguous," however, the court must accept any reasonable interpretation by the agency to which Congress has entrusted the statute's administration. See Chevron, 467 U.S. at 842, 843, 104 S.Ct. at 2781, 2782. We are satisfied that this case falls in the latter category.
 
 
 18
 Contending that deference is not called for here, Con Edison suggests--but, we note, only in its reply brief--that the Supreme Court's Maislin decision modifies or qualifies Chevron in the filed rate doctrine domain. We do not read Maislin as a departure from Chevron instructions. Maislin held that the Interstate Commerce Act does not permit the collection of a rate never filed with the regulator. In deciding that certain rules adopted by the Interstate Commerce Commission could not be reconciled with the statutory provisions undergirding the filed rate doctrine as the doctrine has evolved in the Interstate Commerce Act context, the Maislin Court relied upon "traditional tools of statutory interpretation," an approach Chevron expressly endorsed. See Chevron, 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9; Maislin, 110 S.Ct. at 2771, 2771 (Scalia, J., concurring).
 
 
 19
 Con Edison maintains that the court need look no further than the plain language of section 4(d) to conclude that FERC's order was impermissible, i.e., outside the authority Congress gave to the Commission. In relevant part, section 4(d) directs that the required
 
 
 20
 notice shall be given by filing with the Commission ... new schedules stating plainly the change or changes to be made ... and the time when the ... changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the thirty days' notice ... by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.
 
 
 21
 (Emphasis supplied.) The Commission unquestionably has authority under section 4(d) to shorten the notice period, Con Edison concedes. But the italicized phrases, Con Edison urges, expressly confine that authority to orders dispensing prospectively with notice period days.
 
 
 22
 Con Edison tenders a plausible reading of section 4(d), but not the only reasonable construction the text will bear. In City of Piqua v. FERC, 610 F.2d 950 (D.C.Cir.1979), a case involving substantially identical language in the Federal Power Act (FPA), see 16 U.S.C. § 824(d),[7] this court firmly rejected a petitioner's attempt to impose on FERC a literal construction indistinguishable from the one Con Edison advances here. In Piqua, a city, having signed an agreement setting a May 10 effective date for a rate increase, claimed that the statutory language precluded FERC from fixing a date for the increase earlier than August 5, the date on which the new rate was filed with FERC. Refusing to give conclusive weight to words [294 U.S.App.D.C. 216] that "denoted futurity" in the FPA counterpart to NGA section 4(d), id. at 953, the Piqua court turned away from "lexicographic analysis." Id. Instead, the court looked to the purpose of the notice regime;[8] Piqua held that, where the gas purchaser actually agreed in advance to the rate change date in question, FERC may order an effective date coinciding with, i.e., retroactive to, that agreed date.
 
 
 23
 Piqua was featured in Hall v. FERC, 691 F.2d 1184 (5th Cir.1982), cert. denied, 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983), in which the Fifth Circuit held that FERC abused its discretion when it failed to declare a rate increase retrospectively effective as of the day specified in the parties' agreement. In Columbia Gas Transmission Corp. v. FERC, 895 F.2d 791 (D.C.Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 278, 112 L.Ed.2d 233 (1990) (Columbia Gas ), this court, while adhering to Piqua, clarified that the Commission was not at liberty "to waive the filed rate doctrine" itself by imposing, retroactively, a rate as to which the purchaser had no advance warning. Columbia Gas emphasized that where the purchaser has actual notice that the rate would be increased, as the purchasers did in Piqua and Hall, the predictability-promoting function of section 4(d) and the filed rate doctrine is adequately served. See id. at 795-96 (distinguishing between "statutory notice," which FERC may cut short for good cause pursuant to section 4(d), and advance notice, the essential requirement of the filed rate doctrine).
 
 
 24
 In sum, Piqua, Hall, and Columbia Gas tug strongly against the "plain meaning" view of section 4(d) that Con Edison presses here. Cf. Arkla, 453 U.S. at 578 & n. 8, 101 S.Ct. at 2930 & n. 8 (citing Piqua with apparent approval). Those cases direct us, instead, to recognize that prior notice of a rate increase--albeit not necessarily section 4(d)'s thirty days--is due to purchasers, and to inquire whether that bedrock "due notice" requirement is met in this case. We turn now to that inquiry.
 
 
 25
 The advance word Con Edison received from Tennessee, we acknowledge, was qualitatively different from that afforded the purchaser in Piqua. The customer in Piqua had actually consented in advance both to the rate increase and to the effective date, and therefore was not sympathetically situated to complain. The purchasers here, by contrast, knew on December 1 only that Tennessee had asked for an out-of-cycle PGA increase effective that day. They did not know FERC would grant the increase, in whole or in part, much less that the Commission would dispense with the thirty days' notice period. As Con Edison described the purchasers' expectation, every day that passed without FERC's acceptance of Tennessee's filing for an increase was another day Tennessee could not collect the increase.
 
 
 26
 Louisiana Power & Light, 16 FERC p 61,019 (1981), aff'd sub nom. City of Winnfield v. FERC, 744 F.2d 871 (D.C.Cir.1984) (LPL ), Con Edison argues, reinforced the purchasers' expectation. There, a power supplier, presuming that FERC would approve its request to dispense with the Federal Power Act notice requirement, began immediately to bill a customer at an increased, not yet filed rate. The Commission ruled that the power supplier could not "lawfully charge [the new rate] in advance of Commission acceptance of the [rate] for filing." Id. at 61,033. As FERC pointed out in denying reconsideration in Con Edison's case, however, the quoted language from LPL must be read in context: the LPL "decision turned not on lack of authority to permit the requested effective date, but rather on a finding that good cause for waiver of the required notice had not been shown[.]" Tennessee Gas Pipeline Co., 54 FERC at 61,510. The Commission, moreover, did not allow the increased rate in LPL to become effective even on the date of the Commission's order. Instead, FERC suspended the rate, so that its reasonableness could be investigated, for the maximum statutory period. See LPL, 16 FERC at 61,033 (ordering suspension "for five months from 60 days after filing").
 
 
 27
 [294 U.S.App.D.C. 217] Whatever false cue the Commission's incautious language in LPL might have conveyed, Con Edison was no doubt aware of FERC's long record, detailed in Tennessee's brief as intervenor, of doing exactly what Con Edison objects to here: dispensing retrospectively with the waiting period. See, e.g., Continental Oil Co. v. FPC, 236 F.2d 839, 842 (5th Cir.1956) (affirming April 12 order which made rate increase effective as of the previous November 29--the date of filing), cert. denied, 352 U.S. 966, 77 S.Ct. 352, 1 L.Ed.2d 321 (1957); Columbia Gas Transmission Corp., 45 FERC p 61,128 (1988) (October 21 order set October 1 effective date for out-of-cycle PGA increase); Northwest Pipeline Corp., 37 FERC p 61,255 (1986) (December 12 order set December 1 effective date for out-of-cycle PGA increase). Con Edison comments that an unlawful practice does not become lawful merely because it is longstanding. Cf. SEC v. Sloan, 436 U.S. 103, 117-19, 98 S.Ct. 1702, 1711-12, 56 L.Ed.2d 148 (1978). Our reluctance to disturb the Commission's interpretation, however, increases, and the credibility of Con Edison's protests of unfair surprise wanes, in view of the well-marked administrative pattern.
 
 
 28
 Concerning the consistency of FERC's dispensation with the filed rate doctrine, we note, first, that the Commission preserved its authority initially to pass on the reasonableness of rates. See supra pp. 431-32. Thus, by setting a December 12 deadline for protest and intervention here, FERC could more deliberately, and with the benefit of public comment, consider whether and when to allow Tennessee's increase (filed November 30) to become effective.
 
 
 29
 As to the adequacy of notice to purchasers, fundamental to the filed rate doctrine and the subject of Con Edison's strongest objection in this case, we find this point telling: Con Edison recognizes that, under NGA section 4, the Commission has authority to suspend a pipeline's rate increase, but allow the increase to become effective the day after filing, subject to refund. See Joint Brief of Petitioners at 5-6.[9] Uncertainty as to the actual rate purchasers will end up paying does not appear to us significantly larger under the mode of procedure FERC has chosen to employ. Cf. Transwestern, 897 F.2d at 577-78.
 
 
 30
 True, Con Edison could not know, prior to the Commission's December 27, 1990 order, the precise rate it would pay for gas purchased on December 2. But Con Edison knew, when notified of the November 30 filing, both the lowest cost (the then current rate) and the highest charge (the rate increase for which Tennessee filed) to which it was exposed. The period of uncertainty, moreover, was brief; FERC ruled within four weeks of Tennessee's filing.[10]
 
 
 31
 For the reasons just stated, we are satisfied that Tennessee's November 30, 1990 filing, and the Commission's action on it, afforded purchasers due notice of the out-of-cycle PGA increase effective as of December 1, 1990.
 
 Conclusion
 
 32
 Because NGA section 4(d) enables the Commission to shorten or dispense with the thirty days' notice period for "good cause shown," and because Con Edison and other gas purchasers were on notice on November 30 that Tennessee was seeking a December 1 effective date for its out-of-cycle PGA filing, we conclude that FERC's December 27, 1990 order establishing a December 1 effective date constitutes a reasonable dispensation, one that survives measurement against the Commission's statutory authority, Commission precedent, and the court-delineated filed rate doctrine. [294 U.S.App.D.C. 218] Accordingly, Con Edison's petition for review is denied, and the challenged Commission action is upheld.
 
 
 33
 It is so ordered.
 
 
 
 [1]
 PGAs are FERC-approved clauses that permit pipelines to alter their rates quarterly, with reduced filing requirements, to reflect certain costs of acquiring natural gas. On the pipeline's application, FERC may grant a PGA increase "out-of-cycle," i.e., between the scheduled quarterly adjustments
 
 
 [2]
 Tied to sections 4(c), 4(d), and 5(a) of the Natural Gas Act, 15 U.S.C. §§ 717c(c), (d) & 717d(a), the judicially-recognized "filed rate doctrine" mandates that gas suppliers not charge their customers a rate different from the one currently on file with the Commission. See generally Arkansas Louisiana Gas Co. v. Hall, 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981) (Arkla ). Similar principles apply "across the spectrum" of public utility regulation. Id. at 577, 101 S.Ct. at 2930; see Towns of Concord, Wellesley, and Norwood v. FERC, 955 F.2d 67, 70-72 (D.C.Cir.1992); cf. Maislin Indus., U.S., Inc. v. Primary Steel, Inc., 497 U.S. 116, 110 S.Ct. 2759, 2765-71, 111 L.Ed.2d 94 (1990) (filed rate doctrine in Interstate Commerce Act context)
 
 
 [3]
 Petitioners do not challenge here, as they did initially before the Commission, FERC's determination that "good cause" existed to support elimination of the waiting period. See 15 U.S.C. § 717r(a) (objections, to be preserved for judicial review, ordinarily must be raised in application to FERC for rehearing)
 
 
 [4]
 NGA Section 5(a), 15 U.S.C. § 717d(a), describes the Commission's authority to oversee existing rates, as distinguished from new or changed rates. Under section 5(a), FERC may investigate rates, and set aside or modify unlawful charges. Section 5(a)'s check on existing rates, however, may be exercised only prospectively. The Commission may not order refunds under § 5(a); it may determine only the just and reasonable rate "to be thereafter observed."
 
 
 [5]
 Section 4(d), in full, reads:
 Unless the Commission otherwise orders, no change shall be made by any natural-gas company in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.
 
 
 [6]
 Within certain limits, 18 C.F.R. § 154.305(d), (e) permits pipelines to impose a yearly surcharge reflecting PGA shortfalls
 
 
 [7]
 Noting the identical language and purposes of the Federal Power Act and Natural Gas Act notice provisions, the Supreme Court has cited them interchangeably. See Arkla, 453 U.S. at 577 n. 7, 101 S.Ct. at 2930 n. 7
 
 
 [8]
 See also Towns of Concord, Norwood, and Wellesley, at 74-75 (looking to "core purpose" of filed rate doctrine in context of Federal Power Act)
 
 
 [9]
 Even if we were to regard this standard procedure as preferable, it would not be our prerogative to insist that the Commission follow that course. See Mobil Oil Exploration & Producing Southeast Inc. v. United Distribution Cos., --- U.S. ----, 111 S.Ct. 615, 627, 112 L.Ed.2d 636 (1991); Vermont Yankee Nuclear Power Co. v. NRDC, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978)
 
 
 [10]
 Whether and to what extent FERC may, after the thirty days' waiting period, impose an effective date earlier than the date of the Commission's order is a question we are not called upon to answer in this case